## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | Case No. 19-43070 |
| Stacy Lee Kohout and<br>Todd David Kohout, | Chapter 7 |
| Debtors. | |

| | |
|---|---|
| James L. Snyder,<br>United States Trustee, | |
| Plaintiff, | |
| v. | Adv. Case No. 20-04048 |
| Stacy Lee Kohout, | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

At Minneapolis, Minnesota, July 28, 2021.

This adversary proceeding came on for trial on March 1, 2021, to determine whether Defendant Stacy Lee Kohout's discharge should be denied under 11 U.S.C. § 727(a)(2)(B) & (a)(4)(A). Colin Kreuziger appeared on behalf of Plaintiff James L. Snyder, Acting United States Trustee for Region 12. Scott Timm appeared on behalf of Defendant. On March 1, 2021, the Court ordered supplemental briefing. Responses were filed, and the matter was submitted for decision on May 17, 2021.

This Court has jurisdiction pursuant to 28 U.S.C. §§ 157(b)(1) & 1334, Federal Rule of Bankruptcy Procedure 7001, and Local Rule 1070–1. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(J). Venue is proper pursuant to 28 U.S.C. §§ 1408 & 1409.

NOTICE OF ELECTRONIC ENTRY AND
FILING ORDER OR JUDGMENT
Filed and Docket Entry made on 07/28/2021
Lori Vosejpka, Clerk, by LH

The issues before the Court are whether: 1) Defendant concealed cash received from an inheritance and in a divorce proceeding with an intent to hinder, delay, or defraud creditors or an officer of the estate; and 2) Defendant knowingly and fraudulently made false oaths with respect to the cash.  This is a close case that hinges on Defendant's intent.  Based on the facts and circumstances, and bearing in mind that denial of a debtor's discharge is a harsh and severe result, the Court finds that Plaintiff has failed to prove by a preponderance of the evidence that Defendant acted with the requisite intent necessary for a denial of discharge.

## THE PARTIES

Plaintiff James L. Snyder is the Acting United States Trustee for Region 12.

Defendant Stacy Lee Kohout is a resident of the State of Minnesota and is a joint debtor in the main bankruptcy case.  Defendant provided testimony at trial.

Randall Seaver is the appointed Chapter 7 Trustee (the "Trustee").  The Trustee provided testimony at trial.

Joint debtor Todd Kohout is Defendant's ex-spouse ("Todd," and together with Defendant, the "Debtors").  The parties stipulated to the admissibility of Todd's deposition testimony, which the Court admitted into evidence at trial.[1]

## PROCEDURAL HISTORY

On October 10, 2019, Debtors filed a voluntary joint petition for relief pursuant to Chapter 7 of the Bankruptcy Code.[2]  The Trustee scheduled the Section 341 meeting of creditors

---

[1] Pursuant to the Stipulation Regarding Admissibility of Exhibits, all of the evidence appearing on the parties' exhibit lists was admitted over no objection at the start of trial.  Dkt. 18.  Plaintiff's combined exhibits are consecutively Bates stamped.  When referring to Plaintiff's exhibits in this opinion, the Court cites to the continuous Bates numbering.  Defendant's combined exhibits are also consecutively Bates stamped.  When referring to Defendant's exhibits in this opinion, the Court cites to the continuous Bates numbering.
[2] Case No. 19-43070, Dkt. 1.

for November 5, 2019, and rescheduled the meeting for November 14, 2019.  Debtors converted

their case to Chapter 13 on November 25, 2019, and filed a new set of bankruptcy schedules.[3]

On December 5, 2019, Plaintiff filed a motion to convert Debtors' case back to Chapter

7, alleging bad faith conversion to Chapter 13 and an inability to obtain a confirmable Chapter

13 plan.[4]  Debtors did not file a response, the motion went by default, and on January 16, 2020,

the case was converted back to Chapter 7.[5]  The Trustee convened the Section 341 meeting on

February 3, 2020.

Plaintiff commenced this adversary proceeding on April 3, 2020.  Plaintiff is no longer

pursuing his Section 727(a)(3) and (a)(5) claims, which are Counts II and IV of the Complaint

respectively.[6]  Defendant filed her Answer on April 15, 2020.  After continuing the matter due to

the COVID-19 Pandemic, the Court held a trial via Zoom on March 1, 2021.

## FINDINGS OF FACT

The relevant facts are for the most part undisputed, but the parties dispute their

interpretation and meaning.  The facts were either stipulated to by the parties, derived from the

submitted documentary evidence, or found by the Court after trial.

Debtors were married in 1999, and have two children together.[7]  Starting in 2008,

Debtors owned and operated a construction business called TK Construction of Minnesota, Inc.[8]

Todd performed the construction work, and Defendant performed the bookkeeping duties and

other administrative matters.[9]  Before working for the business, Defendant studied accounting

---

[3] *Id.*, Dkt. 8.
[4] *Id.*, Dkt. 12.
[5] *Id.*, Dkt. 22.
[6] Pl.'s Trial Br. Dkt. 24, at 1.
[7] Stipulation of Facts Dkt. 16, ¶ 1.
[8] *Id.* ¶ 2.
[9] *Id.*

for two years at a community college.[10]  In 2014, Defendant was diagnosed with Systemic

Lupus.[11]

Following the death of her mother, Defendant inherited approximately $35,000.00 in

2011.[12]  Defendant deposited approximately $20,000.00 of the inheritance into a Wells Fargo

brokerage account.[13]  On April 17, 2019, Wells Fargo executed on a judgment against Debtors

and levied Defendant's Wells Fargo savings account.[14]  On April 25, 2019, Defendant withdrew

the balance of $23,050.32 from her brokerage account (the "Inheritance Cash").[15]  Defendant

withdrew the balance, to ensure that Wells Fargo could not levy the account, and placed the

Inheritance Cash in a fireproof briefcase in her bedroom closet.[16]

Defendant understood that she needed to account for the Inheritance Cash, retained

receipts for expenditures funded by the Inheritance Cash, and kept a running balance of the

remaining Inheritance Cash on the back of an envelope.[17]  Defendant spent all of the Inheritance

Cash pre-petition to support herself and her children, and threw away the envelope once the

Inheritance Cash was gone.[18]  During the bankruptcy case, Defendant went through the receipts

and prepared a summary of the Inheritance Cash expenditures for the Trustee's review.[19]

On March 14, 2019, Defendant filed for divorce.[20]  Debtors participated in a court-

ordered financial early neutral evaluation on April 25, 2019 (the "FENE").[21]  A FENE is a

---

[10] *Id.* ¶ 3.
[11] Trial Tr. Dkt. 31, 134:20–135:7, 136:3–18, Mar. 1, 2021.
[12] Stipulation of Facts ¶ 5.
[13] *Id.*
[14] *Id.* ¶ 7.
[15] *Id.* ¶ 8.
[16] Trial Tr. 12:11–13:25, 15:1–14.
[17] *Id.* 24:14–24, 25:8–24, 40:20–25.  *See generally* Inheritance Cash Receipts, Ex. D, at 7–114.
[18] Trial Tr. 24:20–25:24; September 30, 2019 Email, Ex. 15, at 363.
[19] Trial Tr. 110:12–111:8.  *See generally* Inheritance Cash Receipts Summary, Ex. B, at 2–5.
[20] Stipulation of Facts ¶ 6.
[21] *Id.* ¶ 9.

process offered by the family court, with an evaluator serving a similar role as a mediator.  At the

FENE, Defendant initially requested lifetime alimony from Todd in part because of her Lupus.[22]

In exchange for Defendant's waiver of her claim to lifetime alimony, Todd agreed to cede his

half of the equity in their homestead and pay Defendant $10,000.00 by June 30, 2019.[23]  Todd

did not pay the $10,000.00 on time, but rather paid Defendant in installments beginning in July

2019 and ending with a final payment of $1,500.00 on October 3, 2019 (collectively, the

"Payment").[24]  Defendant converted the Payment to cash and stored it in the fireproof

briefcase.[25]

The parties at the FENE, including the evaluator, labeled the Payment as back child

support.[26]  Defendant held an honest belief that the Payment would not be part of the

contemplated bankruptcy filing.[27]  Defendant testified that she never would have agreed to waive

her claim to lifetime alimony and accept the Payment instead if she knew it would become

property of the bankruptcy estate and could be taken from her.[28]  At his deposition, Todd

confirmed Defendant's belief about the Payment being "off the table" in bankruptcy.[29]

As part of the FENE, Debtors agreed to file a joint petition for Chapter 7 relief.[30]

Debtors began exemption planning with their counsel, Mr. Timm, in September 2019.[31]  On

September 20, 2019, Mr. Timm advised Debtors that they would need to report to him the exact

amount of cash on hand on the date of filing.[32]  Mr. Timm inquired several times about whether

---

[22] Trial Tr. 19:13–17.
[23] *Id.* 17:1–11, 19:13–20:13; Stipulation of Facts ¶ 9.
[24] Stipulation of Facts ¶ 10.
[25] Trial Tr. 22:23–23:5.
[26] *E.g., id.* 19:21–20:13, 94:15–20, 94:24–95:3.
[27] *Id.* 19:21–20:13, 141:18–25.
[28] *Id.*
[29] Todd Kohout Dep., Ex. 2, at 30:7–31:21, 37:4–13, July 28, 2020.
[30] Stipulation of Facts ¶ 9.
[31] *See generally* Exs. 7–13, at 345–60.
[32] September 20, 2019 Email, Ex. 13, at 358.

Defendant still possessed any Inheritance Cash.[33]  On September 30, 2019, Defendant informed

Mr. Timm that she had spent all of the Inheritance Cash.[34]

On October 3, 2019, Defendant reported $70.00 in cash on hand to Mr. Timm.[35]  Later

that day, Mr. Timm reiterated the need to disclose the accurate amount of cash on hand on the

date of filing.[36]  On October 10, 2019, the petition date, Defendant scheduled $84.00 in cash on

hand.[37]  In actuality, Defendant possessed at least $8,400.00 in cash on the petition date.[38]

At the time of filing, Defendant worked as a manager at Culver's and scheduled gross

monthly income of $2,766.98.[39]  Two days before the petition date, Defendant emailed Mr.

Timm's assistant stating that she interviewed for a new job as a manager for a custom home

builder.[40]  Defendant did not yet have the job, but it sounded promising that she would be hired

in her field of expertise and could make around $50,000.00 to $60,000.00 annually starting on

November 4, 2019.[41]  Defendant did not receive a job offer until November 4, 2019, and started

her new job on November 14, 2019.[42]

On October 16, 2019, between the petition date and the date Defendant received her job

offer, the Trustee sent Debtors a letter requesting an accounting of the Inheritance Cash.[43]  The

Trustee also informed Debtors of his intent to administer the excess value in their homestead

property.[44]  The Trustee asserted that the property was worth more than the 2019 tax assessed

---

[33] September 24, 2019 Email, Ex. 14, at 361–62; September 30, 2019 Email 363–65.
[34] September 30, 2019 Email 363.
[35] October 3, 2019 Email from Defendant, Ex. 16, at 366.
[36] October 3, 2019 Email from Mr. Timm, Ex. 17, at 370.
[37] Original Schedule A/B, Ex. 20, at 387.
[38] Trial Tr. 50:13–19.  In her briefing, Defendant admits to having at least $8,400.00 in cash from the Payment on the petition date.  Def.'s Trial Br. Dkt. 22, at 2; Def.'s Post-Trial Br. Dkt. 36, at 2.
[39] Original Schedule I, Ex. 21, at 392; *see* Trial Tr. 107:11–13.
[40] October 9, 2019 Emails, Ex. 18, at 375.
[41] *Id.*; *see* Trial Tr. 48:3–49:7.
[42] Trial Tr. 68:24–25, 69:1–2, 70:7–10.
[43] October 16, 2019 Letter, Ex. 23, at 402.
[44] *Id.*

value of $250,700.00 used by Debtors in their schedules, citing a realtor.com value of $292,300.00 to support his assertion.[45]

Debtors did not immediately respond to the Trustee's letter.  On November 12, 2019, after Defendant received her job offer and two days before starting her new position, Mr. Timm informed the Trustee of Debtors' intent to convert their case to Chapter 13.[46]  In response, the Trustee expressed doubt as to whether Debtors could, in good faith, convert their case.[47]  The Trustee harbored suspicions about the conversion because he never received a response to his letter inquiring about the Inheritance Cash, and the original schedules indicated that Debtors would be unable to fund a Chapter 13 plan.[48]  The Trustee again alleged that Debtors undervalued their homestead property in an attempt to make use of the federal bankruptcy exemptions, and restated his intent to administer the excess homestead equity and his demand for an accounting of the Inheritance Cash.[49]  Responding to the allegations, Mr. Timm advised the Trustee that the conversion was due to Defendant's new employment and increased income.[50]  Mr. Timm also advised the Trustee that Debtors obtained a market analysis, which supported the value used for the homestead in their schedules.[51]

Debtors did not attend the Section 341 meeting scheduled for November 14, 2019, and converted their case to Chapter 13 on November 25, 2019.[52]  Around the time of the conversion, Defendant spoke with Mr. Timm's assistant to ask why his office kept asking questions about cash when she had already given Mr. Timm all of the receipts for the Inheritance Cash.[53]

---

[45] *Id.*; Original Schedule A/B at 384.
[46] November 12, 2019 Email, Ex. 24, at 406.
[47] November 15, 2019 Email, Ex. 25, at 408–09.
[48] Trial Tr. 116:17–117:2.
[49] November 15, 2019 Email 408–09.
[50] *Id.* 408.
[51] *Id.*
[52] Conversion of Case by Debtor, Ex. 26, at 411.
[53] Trial Tr. 52:2–18.

Defendant told Mr. Timm's assistant that all she had left was the Payment.[54]  Mr. Timm's

assistant then told Defendant that she needed to disclose the Payment on her bankruptcy

schedules.[55]  Todd confirmed that Defendant, unprompted, brought the Payment to the attention

of Mr. Timm's office.[56]  In Debtors' Chapter 13 Schedule A/B, Defendant disclosed the entire

Payment of $10,000.00 for the first time.[57]  Defendant also disclosed her new employment and

gross monthly income of $3,750.00.[58]

     After Debtors converted their case, Defendant's new employment came to an unexpected

and abrupt end on November 27, 2019, the day before Thanksgiving.[59]  On or about December 2,

2019, Defendant was offered a new job with Waconia Ford and began working there as a

salesperson on December 16, 2019.[60]  Defendant's monthly salary at Waconia Ford is $3,000.00,

with the potential for additional commission income.[61]

     On January 16, 2020, Debtors' case was converted back to Chapter 7.[62]  On January 30,

2020, Debtors filed a new set of amended schedules.[63]  Debtors did not amend Schedule A/B,

but did amend Schedule C to reduce the value of cash on hand from $10,000.00 to $8,400.00 and

to exempt $10,000.00 of the cash under 11 U.S.C. § 522(d)(5).[64]

     On February 3, 2020, the Trustee convened the Section 341 meeting.[65]  There, Defendant

testified as to the following: 1) that she read and signed the original schedules;[66] 2) that she listed

---

[54] *Id.* 52:2–53:1, 107:14–109:6, 140:9–141:4.

[55] *Id.* 52:5–18.

[56] Todd Dep. 40:14–24.

[57] Chapter 13 Schedule A/B, Ex. 27, at 415.

[58] Chapter 13 Schedule I, Ex. 28, at 420.

[59] Trial Tr. 69:1–18, 71:6–72:14.

[60] *Id.* 69:19–25, 77:5–78:7.

[61] *Id.* 80:24–81:13.

[62] Stipulation of Facts ¶ 14.

[63] January 30, 2020 Amended Schedules, Ex. 32, at 452–65.

[64] *Id.* 456.  Debtors did not properly amend their schedules.

[65] Stipulation of Facts ¶ 15.

[66] Section 341 Tr., Ex. 33, at 468:25–469:10, Feb. 3, 2020.

all assets in the original schedules;[67] 3) that there were no errors or omissions in the Chapter 13 schedules;[68] 4) that she kept a list at home of all expenses on which she spent the Inheritance Cash;[69] 5) that she kept the Inheritance Cash and Payment separate;[70] and 6) that she did not have a safe in her home.[71]  Throughout the Section 341 meeting, Defendant referred to the Payment as back child support.[72]

Several months after the Section 341 meeting, Plaintiff commenced this adversary proceeding.  On February 15, 2021, Debtors filed their most recent set of amended schedules to reduce the amount of cash on hand from $10,000.00 to the $8,400.00 in Defendant's possession as of the petition date.[73]  After appearing at first to be a typical no asset case based on Debtors' original petition and schedules, the Trustee has collected close to $10,000.00 in non-exempt assets to administer to creditors, excluding any non-exempt homestead equity.[74]

## DISCUSSION

For individuals such as Defendant, the principal purpose of the Bankruptcy Code is to give a fresh start to the "honest but unfortunate debtor."[75]  Given this purpose, and considering the severe and extreme nature of a denial of discharge, courts must strictly and narrowly construe the provisions of Section 727 in a debtor's favor.[76]  As the objecting party in a denial of discharge action, Plaintiff bears the burden of proving each element of his Section 727 claims by

---

[67] *Id.* 469:24–470:2.
[68] *Id.* 469:20–23.
[69] *Id.* 495:7–22.
[70] *Id.* 501:1–11.
[71] *Id.* 501:12–14.
[72] *E.g., id.* 483:5–17, 503:15–22, 504:11–15.
[73] February 15, 2021 Amended Schedule A/B, Ex. 34, at 528.
[74] Trial Tr. 124:21–125:15.  *See generally* Individual Estate Property Record and Report, Ex. 35, at 533–38.
[75] *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367 (2007) (quoting *Grogan v. Garner*, 498 U.S. 279, 286–87 (1991)); *McDermott v. Petersen* (*In re Petersen*), 564 B.R. 636, 644 (Bankr. D. Minn. 2017).
[76] *Kaler v. Charles* (*In re Charles*), 474 B.R. 680, 683–84 (B.A.P. 8th Cir. 2012) (citing *Korte v. IRS* (*In re Korte*), 262 B.R. 464, 471 (B.A.P. 8th Cir. 2001)).

a preponderance of the evidence.[77]  Even when grounds for denial are shown, courts hold the

discretion to grant a discharge.[78]

A.     **Section 727(a)(2)(B)**

Relevant to this adversary proceeding, Section 727(a)(2)(B) provides that the court shall

grant a discharge unless the debtor, with "an intent to hinder, delay, or defraud a creditor or an

officer of the estate," has concealed property of the estate after the petition date.[79]  To prevail,

the objecting party must prove four elements: 1) the act complained of occurred post-petition; 2)

the debtor committed the act; 3) the act consisted of a transfer, removal, destruction, or

concealment of estate property; and 4) the act was done with an intent to hinder, delay, or

defraud a creditor or an officer of the estate.[80]

Plaintiff alleges that Defendant fraudulently concealed the Payment to hinder, delay, or

defraud the Trustee.  It is undisputed that Defendant did not initially disclose the remaining

$8,400.00 of the Payment in her possession, despite being advised on several occasions about the

need to disclose all cash on hand on the date of filing.  Defendant admits to having at least

$8,400.00 in cash as of the petition date, instead of the $84.00 listed in Debtors' original

schedules.  Defendant did not disclose the Payment until Debtors converted their case to Chapter

13.  Defendant's interest in the Payment was not apparent until the conversion, and Defendant

retained an interest in, and benefitted from, the Payment post-petition.

Thus, only the fourth element is at issue and the question for the Court is whether

Defendant concealed the Payment with the intent to hinder, delay, or defraud creditors or the

---

[77] *Id.*
[78] *In re Petersen*, 564 B.R. at 645; *Mia. Nat'l Bank v. Hacker* (*In re Hacker*), 90 B.R. 994, 997 n.18 (Bankr. W.D. Mo. 1987) (collecting cases).
[79] 11 U.S.C. § 727(a)(2)(B).
[80] *Id.*; *In re Korte*, 262 B.R. at 472; *In re Petersen*, 564 B.R. at 645–47 (clarifying that the elements of a Section 727(a)(2)(B) claim are the same as those of a Section 727(a)(2)(A) claim, except that the conduct complained of must occur post-petition and involve property of the estate).

Trustee.  A showing of fraudulent intent is not required to sustain a Section 727(a)(2)(B) claim.[81]

Plaintiff must only show that Defendant acted with actual intent.[82]  Proof of actual intent by

direct evidence is difficult, so it may be "inferred from the facts and circumstances of the

debtor's conduct."[83]

To prove actual intent, Plaintiff asks the Court to infer that Defendant acted with actual

intent to defraud the Trustee based on circumstantial evidence that is "suspicious."  Plaintiff

avers that Defendant admitted to having the Payment on the petition date, intentionally failed to

disclose the Payment despite Mr. Timm's repeated reminders, converted the case to Chapter 13

to avoid further scrutiny by the Trustee, made false oaths at the Section 341 meeting after she

disclosed the Payment, and mischaracterized the Payment as back child support throughout the

bankruptcy case in an effort to mislead the Trustee and protect it from turnover.

Defendant argues that Plaintiff's Section 727(a)(2)(B) claim fails because she lacked the

requisite intent.  The Court agrees.  Defendant gave credible testimony about her honest belief

that because the evaluator and parties at the FENE labeled the Payment as back child support,

including in the written agreement drafted by the evaluator, it was not part of her bankruptcy

case and did not need to be disclosed.  Todd confirmed that both he and Defendant did not think

the Payment would be part of the bankruptcy case, providing further support for Defendant's

stated belief.  If Defendant thought that the Payment was "off the table" in the bankruptcy case,

it is logical that she did not disclose it in the original schedules because of this mistaken belief,

rather than in an attempt to hinder, delay, or defraud creditors or the Trustee.

---

[81] *In re Korte*, 262 B.R. at 472.
[82] *Id.*
[83] *Id.* at 472–73 (internal citations and quotation omitted).

While Defendant's honest belief alone is insufficient to demonstrate an innocent intent, Defendant took actions consistent with this honest belief.

First, Defendant gave credible testimony that she would not have agreed to the Payment at the FENE in lieu of her claim for lifetime alimony if she knew it would be at risk in the forthcoming bankruptcy case.

Second, after raising the issue to Mr. Timm's assistant and becoming aware that the Payment needed to be disclosed, Defendant disclosed it in her Chapter 13 schedules. Those schedules were filed approximately one and a half months after the petition date, before the Section 341 meeting, and months before Plaintiff commenced this adversary proceeding.

Further, the timing of Debtors' conversion to Chapter 13 aligns with Defendant's new employment and increased income. Defendant did not have an offer for employment on the petition date, and thus did not disclose anything other than her current position as a manager at Culver's on Schedule I. Although Defendant emailed Mr. Timm about her interview pre-petition, she did not receive a job offer until approximately one month after the petition date. Mr. Timm emailed the Trustee about the impending conversion on November 12, 2019, and responded to the Trustee's skepticism by stating that the conversion was about Defendant's new employment and increased income. Defendant started her new job on November 14, 2019, converted the case to Chapter 13 on November 25, 2019, disclosed her new employment and income in Chapter 13 Schedule I, and unexpectedly lost her position two days later on November 27, 2019. This timeline of events provides a credible and innocent explanation for the conversion.

Third, if Defendant honestly believed the Payment was back child support, it makes sense that she continued to refer to it this way throughout the bankruptcy.[84] While Plaintiff claims that Defendant's testimony and characterization of the Payment as back child support show an actual intent to defraud, the testimony can just as easily be viewed as evidence of Defendant's honest belief.

Finally, the Court considers Defendant's life circumstances leading up to, on, and within the months following the petition date. Defendant recently ended what she described as an abusive relationship and went through a divorce, leaving her a single mother with two children. As part of the FENE, Defendant agreed to work with Todd in a joint bankruptcy case. Defendant changed jobs several times, gaining new employment one month after the petition date and unexpectedly losing it two weeks later on the day before Thanksgiving. Defendant testified that these stressors triggered her Lupus symptoms, impacting her ability to recall and keep track of information, as well as causing physical illness. The Court found this credible.

Strictly and narrowly construing Section 727(a)(2)(B) in Defendant's favor, the Court concludes that Defendant's conduct does not evidence an actual intent to defraud. Plaintiff has not carried his burden of proof, and his Section 727(a)(2)(B) claim for denial of Defendant's discharge fails.

**B.      Section 727(a)(4)(A)**

Under Section 727(a)(4)(A), the court shall grant a discharge unless the debtor knowingly and fraudulently made a false oath or account.[85] To prevail, the objecting party must prove five

---

[84] For example, Defendant testified at the Section 341 meeting that the Payment was "back child support that was negotiated in our mediation, and, my understanding [sic], it was exempt because it's back child support that was owed to me for the child." Section 341 Tr. 483:6–9. Defendant also testified that "I didn't know you guys could take child support away from me, and that's what I thought it was. It was back child support for the child." *Id.* 504:12–15. At trial, Defendant confirmed that the Payment was labeled as back child support at the FENE for the purpose of being excluded from the bankruptcy case. Trial Tr. 94:15–17.

[85] 11 U.S.C. § 727(a)(4)(A).

elements: 1) "the [d]ebtor made a statement under oath; (2) the statement was false; (3) the [d]ebtor knew the statement was false; (4) the [d]ebtor made the statement with fraudulent intent; and (5) the statement related materially to the [d]ebtor's bankruptcy case."[86]  The main issue is whether Defendant made the statements with fraudulent intent.

There is no genuine dispute that elements 1, 2, 3, and 5 are met.  Plaintiff alleges that Defendant knowingly and fraudulently made several false oaths in her petition, schedules, and at the Section 341 meeting in an effort to conceal the Inheritance Cash and Payment from the Trustee.  Defendant disclosed only $84.00 in cash in the original schedules despite admitting to having at least $8,400.00 in cash from the Payment on the petition date, and Plaintiff alleges she made other false oaths relating to the Inheritance Cash and Payment at the Section 341 meeting.[87]

Statements made in a bankruptcy petition, schedules, and at the Section 341 meeting constitute oaths.[88]  Defendant's statements at issue relating to the Payment occurred in the petition, schedules, or at the Section 341 meeting.  Omissions in a petition and schedules are considered false statements.[89]  Defendant admits to having at least $8,400.00 in cash as of the petition date, and her omission of the cash is a false statement.

A debtor "acts knowingly if he or she acts deliberately and consciously."[90]  Careless or reckless acts are insufficient to satisfy the knowledge requirement.[91]  Defendant knew she had more than $84.00 in cash on the petition date.  Defendant also knew she had to disclose all of her

---

[86] *In re Charles*, 474 B.R. at 684 (quoting *Lincoln Sav. Bank v. Freese* (*In re Freese*), 460 B.R. 733, 738 (B.A.P. 8th Cir. 2011)).
[87] *See supra* notes 66–71 and accompanying text.
[88] *In re Charles*, 474 B.R. at 684.
[89] *Home Serv. Oil Co. v. Cecil* (*In re Cecil*), 542 B.R. 447, 451–55 (B.A.P. 8th Cir. 2015).
[90] *In re Petersen*, 564 B.R. at 650 (quoting *Roberts v. Erhard* (*In re Roberts*), 331 B.R. 876, 883 (B.A.P. 9th Cir. 2005)).
[91] *Id.*

cash on hand as of the date of filing.  Thus, Defendant knowingly omitted the Payment from her petition and original schedules.

The threshold for the fifth element, materiality, is low.[92]  A statement relates materially to a debtor's bankruptcy case if it bears a relationship to the debtor's estate, business transactions, or the discovery assets.[93]  The Payment is Defendant's asset and relates materially to her bankruptcy estate.

The remaining fourth element requires the Court to determine whether Defendant made the false oaths with fraudulent intent.  Fraudulent intent can be proved by circumstantial evidence, and "statements made with reckless indifference to the truth are regarded as intentionally false."[94]  Multiple false statements under oath may be sufficient to show a reckless indifference to the truth.[95]  But a showing of fraudulent intent requires "more than an honest mistake or oversight," and "courts are often understanding of a single omission or error resulting from innocent mistake."[96]  Although a subsequent disclosure will not absolve an initial omission, it may evidence an innocent intent.[97]

Plaintiff again relies on circumstantial evidence, which he deems to be suspicious, to support his claim.  Plaintiff requests that the Court infer fraudulent intent based on Defendant's multiple false oaths in connection with her concealment of the Payment[98] and alleged manipulation of the Bankruptcy Code by converting the case to Chapter 13.  As discussed above,

---

[92] *In re Charles*, 474 B.R. at 686.
[93] *Id.*
[94] *In re Korte*, 262 B.R. at 474 (internal citation and quotation omitted).
[95] *In re Charles*, 474 B.R. at 686.
[96] *In re Petersen*, 564 B.R. at 649, 651 (quoting *Jordan v. Bren* (*In re Bren*), 303 B.R. 610, 614 (B.A.P. 8th Cir. 2004), *aff'd in part and rev'd in part on other grounds*, 122 F. App'x 285 (8th Cir. 2005) (unpublished)).
[97] *Ellsworth v. Bauder* (*In re Bauder*), 333 B.R. 828, 831 (B.A.P. 8th Cir. 2005).
[98] *See supra* notes 66–71 and accompanying text.

however, the Court finds that the timing of Defendant's new employment and increased income adequately explains the conversion.

Plaintiff asserts that, at best, Defendant acted with reckless indifference to the truth as Defendant knew (because of Mr. Timm's repeated reminders) that she was required to disclose all cash on hand as of the petition date. Defendant did not disclose the Payment based on an incorrect belief that because it was labeled as back child support at the FENE, the Payment did not need to be disclosed in the petition and schedules. Under these circumstances, Plaintiff argues that Defendant's discharge should be denied.

Defendant argues that Plaintiff's Section 727(a)(4)(A) claim fails because she lacked the requisite fraudulent intent. Defendant states that she came away from the FENE with an honest belief that the Payment did not need to be disclosed. Defendant disclosed the Payment in the Chapter 13 schedules upon realizing it was property of the estate, and subsequently turned over $5,558.00 of the non-exempt Payment cash to the Trustee.[99] Defendant asserts that her actions demonstrate an honest belief with respect to the Payment, as opposed to a fraudulent intent to conceal it from her creditors or the Trustee. As discussed above, the Court finds that Defendant held an honest belief with respect to the Payment.

The Court does not condone Defendant's failure to disclose the Payment. The Bankruptcy Code requires a full and complete disclosure of any and all interests of any kind.[100] The Bankruptcy Appellate Panel for the Eighth Circuit made this point clear in the case of *In re Cecil*. There, the debtor conceded that her initial schedules omitted as many as twelve financial accounts, jewelry, firearms, an interest in a business and its assets, income other than social security benefits, and a $23,000.00 payment made to her mortgage lender with cash taken from a

---

[99] Individual Estate Property Record and Report 533.
[100] *In re Cecil*, 542 B.R at 453–54 (internal citations and quotations omitted).

home safe within ninety days pre-petition.[101]  Although the debtor disclosed many of the omitted

assets at the Section 341 meeting, the debtor never amended her statement of financial affairs

and did not file amended schedules until the day before trial.[102]  The bankruptcy court concluded

that taken together, the debtor's omissions amounted to a reckless indifference to the truth and

were sufficient to find fraudulent intent.[103]

On appeal in *Cecil*, the debtor argued that she did not list several of the accounts and

assets because they were titled in her name for the benefit of someone else.[104]  The debtor did

not believe the funds and assets belonged to her, and as a result did not think they were property

of the estate that needed to be disclosed.[105]  In affirming the bankruptcy court, the BAP

emphasized that questions about whether assets are property of the estate should be determined

by a trustee or, ultimately, the bankruptcy court, and not by a debtor.[106]

The debtor's omissions of assets and interests in *Cecil* are more substantial and extensive

than Defendant's omission of the Payment.  And unlike the debtor in *Cecil*, Defendant did not

wait until the eve of trial to file amended schedules and disclose the Payment.[107]  After bringing

the Payment to the attention of Mr. Timm's assistant, Defendant disclosed it in her Chapter 13

schedules filed shortly after the petition date.

The facts and circumstances in this case, however, are more similar to those of the debtor

in *Bauder*, where the BAP reversed the bankruptcy court and held that the debtor lacked

---

[101] *Id.* at 450.
[102] *Id.* at 450–51.
[103] *Id.* at 451.
[104] *Id.* at 452.
[105] *Id.* at 452–53.
[106] *Id.* at 454.
[107] The BAP noted the fact that the debtor's attorney in *Cecil* erroneously believed he filed amended schedules shortly after the Section 341 meeting.  *Id.* at 450–51.  The bankruptcy court found the attorney's belief to be credible.  *Id.*

17

fraudulent intent.[108]  In *Bauder*, the debtor amended her schedules nine days after the Section

341 meeting to disclose additional personal property, including a diamond ring in her daughter's

possession valued at $300.00.[109]  At trial, the debtor testified that she gave the ring to her

daughter pre-petition for safe keeping and forgot about it when she filled out her original

schedules.[110]  The debtor also testified that an employee at her attorney's office told her she only

needed to list personal property in her possession.[111]  The bankruptcy court found that the

debtor's explanations lacked credibility and were contradictory, and denied the debtor's

discharge because of her failure to list the ring on her original schedules.[112]

  The BAP reversed, finding clear error in the bankruptcy court's decision.[113]  The BAP

reasoned it was logical that if the debtor believed, even in error, that she only had to disclose

assets in her possession, then she might not have recalled items that were in another's

possession, such as the ring.[114]  The BAP considered the debtor's subsequent disclosure in the

amended schedules to be evidence of innocent intent.[115]  Of particular importance to this case,

the BAP concluded that the bankruptcy court failed to give any weight to the debtor's disclosure

of the ring in her amended schedules shortly after the Section 341 meeting and before the

adversary complaint was filed.[116]  The BAP also considered the debtor's life circumstances, such

as her limited education, attention deficit disorder, depression, and anxiety.[117]

---

[108] *In re Bauder*, 333 B.R. at 829, 831.
[109] *Id*. at 829–30.
[110] *Id.* at 830.
[111] *Id.*
[112] *Id.*
[113] *Id.* at 831–32.
[114] *Id.* at 831.
[115] *Id.* at 831–32.
[116] *Id.*
[117] *Id.* at 829, 832.

Like the debtor in *Bauder*, Defendant's actions in this case do not rise to the level of fraudulent intent. Defendant gave credible testimony about her honest belief regarding the Payment. Defendant's honest belief, although incorrect, combined with her actions taken in furtherance of this belief provides a logical explanation for the initial omission of the Payment in her original schedules, and a showing of fraudulent intent requires more than an honest mistake or oversight. The Court also considers Defendant's life circumstances and medical condition at the time of the events in question.

Critical to the Court's determination of a lack of fraudulent intent is the fact that Defendant brought up the Payment on her own accord and disclosed it in the Chapter 13 schedules approximately one and a half months after the petition date. She did not wait until after the adversary proceeding was filed.

As a final point, at trial and in post-trial briefing Plaintiff discussed Defendant's failure to closely read and scrutinize her petition, schedules, conversion documents, and amended schedules.[118] In the case of *In re Bren*, the Eighth Circuit declined to deny a discharge for a false oath or account solely because the debtors initially declared they inspected their petition and schedules when, in fact, they did not.[119] Unlike Defendant, the debtors in *Bren* never amended their petition and schedules.[120] There, a joint debtor came forward with information about an inheritance she previously failed to report, and in finding a lack of fraudulent intent the Eighth Circuit emphasized that the undisclosed information "did not have to be dragged into the light of day through a court hearing."[121] The same is true of the Payment in this case.

---

[118] *E.g.*, Trial Tr. 60:10–14 ("[D]id I read line item by line item? I can honestly tell you I probably did not.").
[119] *In re Bren*, 122 F. App'x at 288.
[120] *Id.*
[121] *Id.* at 289.

Strictly and narrowly construing Section 727(a)(4)(A) in Defendant's favor, the Court concludes that Defendant's conduct does not evidence a fraudulent intent. Plaintiff has not carried his burden of proof, and his Section 727(a)(4)(A) claim for denial of Defendant's discharge fails.

## C.   Issues Raised Outside of the Pleadings

The Complaint only raised issues regarding the Inheritance Cash and Payment, and Plaintiff has since dropped the claims relating to the Inheritance Cash. Yet throughout the case and at trial, Plaintiff raised issues related to Defendant's change in employment, conversion to Chapter 13, undervaluing assets, and overstating debt, none of which are contemplated by the Complaint.

Plaintiff did not amend his Complaint or move under Federal Rule of Civil Procedure 15(b)(2), made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7015, to conform his pleadings to the evidence. Nevertheless, at trial and in briefing both parties introduced evidence and elicited testimony about the issues raised outside of the Complaint.

Although the Court will consider the issues raised outside of the Complaint, the result remains the same. As already discussed in this opinion, Defendant adequately explained the disclosures related to her employment, which in turn explained the conversion to Chapter 13.

Plaintiff also argues that Defendant undervalued the homestead property, overstated mortgage debt, and undervalued three snowmobiles in an effort to fraudulently maximize exemptions and protect assets.

In original Schedule A/B, Debtors valued their homestead at $250,700.00 based on the property's 2019 tax assessed value, which Debtors also used at the FENE. In response to the Trustee's speculation that Debtors undervalued the property, Debtors obtained a market analysis

showing the value to be between $265,000.00 and $275,000.00.[122]  Defendant testified that

certain repairs were necessary to support the market analysis valuation, and a contractor gave a

written estimate of over $20,000.00 for the repairs.[123]  While inappropriate for a valuation

hearing, Debtors' use of the tax assessed value for purposes of filling out their petition and

schedules is reasonable under the circumstances.

Neither party introduced original Schedule D into evidence to show the scheduled

mortgage debts owed on the homestead property.  The Court takes judicial notice of Schedule D,

which states that $137,463.00 was owed to Bank of America and $70,177.00 was owed to Wells

Fargo Home Equity.[124]  Defendant asserts that she relied on a previous mortgage statement and

did not intend to deceive or defraud anyone.  Taking judicial notice of Amended Schedule D,

filed on March 5, 2020, Defendant reduced the outstanding Bank of America mortgage debt by

$1,330.00 to $136,133.00, and the outstanding Wells Fargo mortgage debt by $225.00, to

$69,952.00.[125]  Defendant has provided an adequate explanation for the minor discrepancy in

Debtors' valuation of the mortgage debt.

Finally, Plaintiff argues that Defendant deliberately reduced the value of three

snowmobiles.  Original Schedule A/B lists three snowmobiles, all of which are valued at

$500.00.[126]  At trial, Defendant testified that the snowmobiles needed repairs, and that she called

a powersports shop pre-petition to get an estimate.[127]  Defendant testified that the shop said the

snowmobiles could be worth anywhere from $1,000.00 to $2,000.00 each depending on their

condition, and that the shop would buy them as-is for $500.00 a piece to part them out.[128]

---

[122] Trial Tr. 55:21–56:17.
[123] *Id.* 56:18–57:1, 57:10–13.
[124] Case No. 19-43070, Dkt. 1, at 22, 24.
[125] *Id.*, Dkt. 35, at 8, 10.
[126] Original Schedule A/B at 385–86.
[127] Trial Tr. 30:20–31:3, 34:21–35:23.
[128] *Id.* 36:9–21, 38:8–17.

Defendant testified that she listed this as-is value of $500.00 for each snowmobile in the original schedules, taking the needed repairs into consideration.[129]  Defendant has thus adequately explained the valuation of the snowmobiles in her original schedules.

## CONCLUSION

Denial of discharge is a harsh and severe result.  Bearing this in mind, the Court strictly and narrowly construes the provisions of Section 727 in Defendant's favor.  Based on these considerations, the evidence, and the witness testimony at trial, and for all the reasons stated above, the Court finds that Plaintiff has failed to establish by a preponderance of the evidence his claims under 11 U.S.C. § 727(a)(2)(B) & (a)(4)(A).

## CONCLUSIONS OF LAW

1.  This adversary proceeding is a core proceeding under 11 U.S.C. § 157(b)(2)(J).

2.  Venue is proper before this Court under 28 U.S.C. §§ 1408 & 1409.

3.  Defendant's discharge is not denied.

## ORDER

**IT IS ORDERED**:  Defendant's discharge is not denied.

LET JUDGMENT BE ENTERED ACCORDINGLY.

/e/ Kathleen H. Sanberg
Kathleen H. Sanberg
United States Bankruptcy Judge

---

[129] *Id.* 37:8–24.